# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FRISCO FERTILITY CENTER, PLLC, d/b/a DALLAS IFV, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:23-CV-617 |
| JULIAN ESCOBAR, M.D., and EH FERTILITY PLLC, d/b/a CONCEIVE FERTILITY, | § § § § § | Judge Mazzant |
| *Defendants.* | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Compel Enforcement of Protocol (Dkt. #45). Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's Motion to Compel Enforcement of Protocol should be **GRANTED in part**.

## BACKGROUND

Frisco Fertility Center, PLLC ("FFC") brought claims for violations of the Defend Trade Secrets Act, violations of the Computer Fraud and Abuse Act, knowing participation in breach of fiduciary duty, and tortious interference with contract against Defendants Julian Escobar, M.D. ("Escobar") and EH Fertility PLLC ("EH Fertility") (collectively, the "Defendants") (Dkt. #1).

In lieu of seeking a preliminary injunction, FFC and the Defendants entered into a discovery agreement (the "Agreed Protocol") governing FFC's review of the Defendants' electronicly stored information (Dkt. #45, Exhibit 4). The Agreed Protocol limits its scope to specific devices, email accounts, and network-based storage accounts (which the Agreed Protocol refers to as "Preserved Materials"), including "[c]redentials for Microsoft OneDrive Account

owned by [EH Fertility]" and the credentials for five (5) specifically identified EH Fertility email accounts (Dkt. #45, Exhibit 4 ¶ 1). According to the Agreed Protocol, Rubio Digital Forensics, LLC ("Rubio"), a private investigation firm, would carry out the Agreed Protocol (Dkt. #45, Exhibit 1 ¶ 2; Dkt. #45, Exhibit 4 ¶ 1). Graciela Rubio, a Senior Digital Forensic Expert at Rubio, is also FFC's retained expert witness in this case (Dkt. #45, Exhibit 1 ¶ 2; Dkt. #45, Exhibit 4 at p. 1).

The Agreed Protocol provides that the "Defendants shall provide all login and password information associated with the Preserved Materials to [Rubio]" (Dkt. #45, Exhibit 4 ¶ 4). Further, the "Defendants . . . agree to use good faith in cooperating with the [Agreed Protocol] and ensuring that [Rubio] has full access to the Preserved Materials" (Dkt. #45, Exhibit 4 ¶ 4).

However, additional materials may become Preserved Materials (and thus subject to investigation by Rubio under the Agreed Protocol) "[i]f evidence exists that any of [FFC's] Designated Trade Secrets were accessed or existed on any removable media or cloud-based repository or storage system" (Dkt. #45, Exhibit 4 ¶ 18).[1] In this circumstance, "[Rubio] may request, and Defendants agree to make good-faith and reasonable efforts to provide . . . access to such removable media or cloud-based repository or storage system to be treated as an expansion of the Preserved Devices under [the Agreed Protocol]" (Dkt. #45, Exhibit 4 ¶ 18).[2]

---

[1] The Agreed Protocol defines "Designated Trade Secrets" as "a list of any Recovered Documents that contain [FFC's] confidential, proprietary, or trade secret information" that FFC provides to the Defendants within three (3) days "[f]rom the Recovered Documents produced to [FFC]" (Dkt. #45, Exhibit 4 ¶ 16). Further, the Agreed Protocol defines "Recovered Documents" as "a forensic report detailing the results of [Rubio's inspection]" that [Rubio] shall provide the Parties' counsel in the Lawsuit with" (Dkt. #45, Exhibit 4 ¶ 12).
[2] This provision of the Agreed Protocol refers to "Preserved Devices," which the Agreed Protocol does not define and only mentions one (1) other time (*See* Dkt. #45, Exhibit 4). However, the Agreed Protocol defines "Preserved Materials" and uses the term several times (*See* Dkt. #45, Exhibit 4). For the purposes of this Memorandum Opinion and Order, the Court assumes that "Preserved Devices" and "Preserved Materials" share the same meaning because it does not impact the Court's analysis. However, this assumption will not limit any future analysis or interpretation of the Agreed Protocol by the Court.

EH Fertility declined to provide the login credentials for the accounts listed in the Agreed Protocol because these login credentials provide access to Microsoft 365, which allows access to many other apps not within the scope of discovery authorized within the Agreed Protocol (Dkt. #48, Exhibit 2 ¶¶ 8–9). EH Fertility seeks to minimize the exposure of its sensitive information and data, much of which consists of sensitive, confidential patient health information (Dkt. #48, Exhibit 2 ¶¶ 8–9). Therefore, EH Fertility created a "Review Account" to provide Rubio with access to EH Fertility's OneDrive account and the five (5) listed email accounts (Dkt. #48, Exhibit 2 ¶ 9). The parties dispute whether the Review Account has provided Rubio with sufficient access to the materials at issue to carry out the Agreed Protocol (*See*, *e.g.*, Dkt. #45, Exhibit 1 ¶ 19; Dkt. #48 at pp. 7–8).

After the parties signed the Agreed Protocol, FFC claims to have discovered additional Dropbox and email accounts other than those listed in the Agreed Protocol (Dkt. #45, Exhibit 1 ¶ 40; Dkt. #45, Exhibit 34 ¶ 12). FFC now seeks to gain access to these accounts pursuant to the terms of the Agreed Protocol (Dkt. #45 at p. 13).

Following inspection of Escobar's iPhone and Apple iCloud account, Rubio determined that several other devices have accessed to Escobar's Apple iCloud account (Dkt. #45, Exhibit 1 ¶¶ 20–21). FFC claims that these devices consist of an iPhone 14 Pro, an iPhone 6, an iPhone 5, two (2) laptop computers, and a desktop computer (Dkt. #45 at p. 9). FFC requests that the Court order production of these devices (Dkt. #45 at p. 9).

Further, EH Fertility lost approximately 60,000 emails from before December 2, 2022 due to a cyberattack on its email provider, Rackspace (Dkt. #45, Exhibit 1 ¶ 25). In a separate matter, one witness in the case, Cheryl Zapata, suffered an outage in her email account (Dkt. #45, Exhibit

3

1 ¶ 25). FFC has expressed concern about the extent to which the Defendants have produced information relating to these outages and any lost emails (Dkt. #45 at pp. 13–15). In response, the Defendants claim that have provided FFC with information and documentation on the outages (Dkt. #48, Exhibit 7 at pp. 2, 6). EH Fertility had said that it would produce recovered materials that are relevant to any party's claims or defenses based on the applicable rules (Dkt. #48, Exhibit 7 at p. 2). Subsequently, EH Fertility produced approximately 15,000 recovered emails to Rubio (Dkt. #45, Exhibit 19 at p. 2).

Additionally, EH Fertility does not possess a singular OneDrive account to store and share files in the normal course of business (Dkt. #48, Exhibit 2 ¶ 9(c)). However, the Agreed Protocol refers only to a "Microsoft OneDrive Account owned by [EH Fertility]" (Dkt. #45, Exhibit 4 ¶ 1). EH Fertility understood providing its OneDrive account to mean providing access to its SharePoint account (Dkt. #48 at p. 6). FFC also understands EH Fertility's OneDrive account as referring to its SharePoint account (Dkt. #45, Exhibit 1 ¶ 27).

On January 8, 2024, FFC filed the present motion to compel (Dkt. #45). First, FFC requests that the Court find the Agreed Protocol to be enforceable and valid (Dkt. #45 at pp. 6–7). Second, FFC requests that the Court order Defendants to provide Rubio with (1) each undisclosed device linked to Escobar's Apple iCloud account; (2) credentials to access EH Fertility's Microsoft OneDrive account in its entirety; (3) all email accounts linked to the domain of "@cfcivf.com" and all other email accounts owned or operated by EH Fertility, Escobar, or any other entities that Escobar is associated with; (4) various information relating to the recovery of lost emails following outages; and (5) reasonable costs and attorney's fees (Dkt. #45 at pp. 9–15).

On January 19, 2024, the Defendants filed their response (Dkt. #48). On January 26, 2024, EH Fertility filed its reply (Dkt. #49).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the Court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

5

## ANALYSIS

The Court considers three (3) issues. First, the Court considers whether the Defendants must provide the login credentials to EH Fertility's SharePoint account and the five (5) listed EH Fertility email accounts in the Agreed Protocol. Second, the Court considers whether the Defendants must produce any additional materials that FFC has requested. Third, the Court considers the issue of reasonable costs and attorney's fees.

Notably, FFC only requests that the Court compel the Defendants' production of various materials *pursuant to the Agreed Protocol* (*See generally* Dkt. #45). FFC argues that the Agreed Protocol is a stipulated procedure under Federal Rule of Civil Procedure 29(b) (Dkt. #45 at pp. 6–7). Courts generally uphold agreements concerning discovery between parties. *Widevine Techs., Inc. v. Verimatrix, Inc.*, No. 2-08-CV-321, 2009 WL 4884397, at *2 (E.D. Tex. Dec. 10, 2009); *Valenzuela v. Willette*, No. 5:14-CV-62, 2014 WL 12620827, at *2 (E.D. Tex. Nov. 28, 2014). An agreement governing discovery "may be equated to a contract, and shall be upheld if the agreement is valid under basic contract law." *Valenzuela*, 2014 WL 1262087, at *2 (citing *Widevine Techs., Inc.*, 2009 WL 4884397, at *2).

No party disputes that the Agreed Protocol is a valid and enforceable contract and a stipulated procedure under Federal Rule of Civil Procedure 29(b) (*See* Dkt. #45; Dkt. #48; Dkt. #49). Rather, the parties make their arguments within the framework of the Agreed Protocol (*See* Dkt. #45; Dkt. #48; Dkt. #49). Therefore, the Court finds that the Agreed Protocol is fully enforceable pursuant to Federal Rule of Civil Procedure 29(b).

I.   **EH Fertility's Login Credentials for Its SharePoint Account and the Five (5) Listed Email Accounts**

FFC argues that the Defendants have violated their obligation under the Agreed Protocol to provide to Rubio the login credentials to EH Fertility's OneDrive account and five (5) listed EH Fertility email accounts (Dkt. #45 at pp. 9–12). FFC claims that the Defendants have given Rubio the Review Account with limited access because it does not include access to "all user accounts" (Dkt. #45 at p. 11). Without access to further accounts, FFC claims that Rubio cannot investigate EH Fertility's email accounts for deletion, transfer, or to verify EH Fertility's statements that it has turned over all of the emails (Dkt. #45 at p. 12).

The Defendants argue that they complied with the Agreed Protocol by providing the Review Account to view the Preserved Materials (Dkt. #48 at pp. 6–7, 12). The Defendants claim that they took this action "[t]o avoid granting [Rubio] unabated access to [EH Fertility's] Microsoft 365 suite, and to streamline [Rubio's] access to the agreed accounts without undue disruption to [EH Fertility]" (Dkt. #48 at p. 7). They claim this action complies with the Agreed Protocol by ensuring that Rubio has "full access to the Preserved Materials," but "dispos[ing] the need to change individual account passwords after forensic imaging" (Dkt. #48 at p. 12) (citing Dkt. #45, Exhibit 4 ¶ 4).

The parties' dispute concerns which materials Rubio should have access to and how Rubio may access said materials. The materials Rubio may investigate only extends to Preserved Materials (*See* Dkt. #45, Exhibit 4 ¶¶ 3–4, 6–8, 12, 16–19). A material may be a Preserved Material when the Agreed Protocol lists the material as such or "evidence exists that any of [FFC's] Designated Trade Secrets were accessed or existed" on said material (Dkt. #45, Exhibit 4 ¶ 1, 18). Beyond the six (6) specifically listed Preserved Materials that FFC complains that Rubio does not

7

have access to (EH Fertility's OneDrive account and the five (5) EH Fertility email accounts), FFC does not present specific evidence suggesting "that any of [FFC's] Designated Trade Secrets were accessed or existed" on any additional email account or OneDrive account (*See* Dkt. #45; Dkt. #49). Therefore, the Preserved Materials at issue in this section consist of the "Microsoft OneDrive Account owned by [EH Fertility]" and the five (5) EH Fertility e-mail accounts" (*See* Dkt. #45, Exhibit 4 ¶ 1).

The Court construes the "Microsoft OneDrive Account owned by [EH Fertility]" to mean EH Fertility's SharePoint account (even though access to EH Fertility's Microsoft 365 account provides access to various other apps). The meaning of the "Microsoft OneDrive Account owned by [EH Fertility]" is initially unclear because EH Fertility does not have a singular OneDrive account (Dkt. #48, Exhibit 2 ¶ 9(c)). However, all parties understand the "Microsoft OneDrive Account owned by [EH Fertility]" as referring to EH Fertility's SharePoint account (Dkt. #45, Exhibit 1 ¶ 27; Dkt. #48 at p. 6). Therefore, the Court adopts the parties' interpretation because the parties have only presented one (1) reasonable interpretation of this term.

Contrary to the Defendants' assertions, the Agreed Protocol requires the Defendants to provide Rubio with the login credentials to access the Preserved Materials. The Defendants note that the Agreed Protocol requires them to "use good faith in . . . ensuring that [Rubio] has full access to the Preserved Materials" (Dkt. #48 at p. 12) (citing Dkt. #45, Exhibit 4 ¶ 4). However, the Agreed Protocol specifically states "[s]imultaneously with delivery of the Preserved Materials, Defendants shall provide all login and password information associated with the Preserved Materials to [Rubio]" (Dkt. #45, Exhibit 4 ¶ 4). Further, when the Agreed Protocol refers to the six (6) Preserved Materials at issue, it specifically refers to the "[c]redentials" for said Preserved

8

Materials (Dkt. #45, Exhibit 4 ¶ 1). Therefore, the Review Account is not a sufficient substitute to the login credentials for the six (6) Preserved Materials at issue.

Although the Defendants must provide the login credentials for EH Fertility's SharePoint account and the five (5) listed EH Fertility email accounts, these credentials do not authorize Rubio to access the entirety of each associated Microsoft 365 account.[3] The Agreed Protocol only contemplates access to EH Fertility's SharePoint account and the five (5) listed EH Fertility email accounts, as opposed to each account's broader Microsoft 365 account (*See* Dkt. #45, Exhibit 4 ¶ 1). Therefore, absent an expansion of the Preserved Materials pursuant to paragraph 18 of the Agreed Protocol, Rubio may not use the login credentials for EH Fertility's SharePoint account to access any program other than EH Fertility's SharePoint application and the login credentials for each listed EH Fertility email account to access any program other than said account's email application.

To the extent that the Defendants express concern that these login credentials may provide Rubio with access to "protected health information and a direct competitor's business materials," the Agreed Protocol contains procedures for this situation (Dkt. #45, Exhibit 4 ¶¶ 8, 13–14). The Agreed Protocol specifies that Rubio shall maintain all information obtained from the inspection of the Preserved Materials in confidence (Dkt. #45, Exhibit 4 ¶¶ 8, 13–14). Further, even though Graciela Rubio is FFC's retained expert witness, Rubio may not share with FFC the documents selected via the Agreed Protocol's procedures, subject to paragraph 15 of the Agreed Protocol (Dkt. #45, Exhibit 4 ¶ 13). Instead, Rubio must send these documents to the Defendants' counsel

---

[3] One (1) of the listed EH Fertility email accounts, info@cfcivf.com, was never activated and therefore has no contents (Dkt. #48, Exhibit 2 ¶ 9(i)). If no login credentials exist for info@cfcivf.com, then the Defendants obviously cannot produce said credentials.

(Dkt. #45, Exhibit 4 ¶ 13). Then, the Defendants produce the non-privileged documents (along with a privilege log) to FFC (Dkt. #45, Exhibit 4 ¶ 14).

The Defendants' Review Account did not comply with the terms of the Agreed Protocol. The Defendants shall produce to Rubio the login credentials for (1) drescobar@cfcivf.com; (2) drhass@cfcivf.com; (3) drjones@cfcivf.com; (4) nina@cfcivf.com; (5) info@cfcivf.com, if any such credentials exist; and (6) EH Fertility's SharePoint account.

## II. The Defendants' Other Materials

FFC additionally requests that the Court order production of additional materials, including (1) each undisclosed device linked to Escobar's Apple iCloud account; (2) all email addresses linked to the domain of "@cfcivf.com" and all other email accounts owned or operated by EH Fertility, Escobar, or any other entities that Escobar is associated with; and (3) various information relating to the recovery of lost emails following outages (Dkt. #45 at pp. 8–9, 12–15). In each of these instances, FFC has not demonstrated that any of these additional materials are Preserved Materials via evidence showing that "any of [FFC's] Designated Trade Secrets were accessed or existed" on said materials (Dkt. #45, Exhibit 4 ¶ 18).[4] Therefore, the Court will not order production of these additional materials.

## III. Reasonable Costs and Attorney's Fees

The Court declines to grant FFC's request for reasonable costs and attorney's fees. All costs shall be borne by the party incurring them.

---

[4] For example, that one (1) of Escobar's old iPhones accessed his Apple iCloud does not demonstrate that any of FFC's Designated Trade Secrets were accessed or existed on that iPhone.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Compel Enforcement of Protocol (Dkt. #45) is **GRANTED in part**. Within fourteen (14) days following the issuance of this Memorandum Opinion and Order, the Defendants shall produce to Rubio Digital Forensics, LLC the login credentials for (1) drescobar@cfcivf.com; (2) drhass@cfcivf.com; (3) drjones@cfcivf.com; (4) nina@cfcivf.com; (5) info@cfcivf.com, if any such credentials exist; and (6) EH Fertility PLLC's SharePoint account. Rubio Digital Forensics, LLC may not use the login credentials for EH Fertility PLLC's SharePoint account to access any program other than EH Fertility's SharePoint application and the login credentials for each email account to access any program other than said account's email application.

**IT IS SO ORDERED**.

SIGNED this 25th day of April, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE